## CHADDOCK COLLEGE
### v.
## HENRY BRETHERICK.

*Master and Servant—Recovery of Wages.*

1. Any person under contract, or other legal obligation to represent or act for another in a particular business, can not lawfully serve or acquire any private interest of his own in opposition to such business, during the continuance of the relations between them.

2. Whether the taking of private pupils by a professor of music in a college is in competition therewith, is a question of fact for the jury.

3. In an action brought to recover a balance due on account of salary, this court declines, in view of the evidence, to interfere with a verdict for the plaintiff.

[Opinion filed May 24, 1890.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. J. F. CARROTT, for appellant.

Messrs. H. M. SWOPE and CARTER, GOVERT & PAPE, for appellee.

PLEASANTS, P. J. Appellee brought this suit before a justice of the peace to recover $127.30 claimed as the balance due on account of his salary as principal of the musical department of the college for the college year 1886–7. On appeal he obtained judgment upon a verdict for that amount.

It appears from the record that a noted musician and teacher of Chicago having recommended him as a suitable person for that position, the president of the college wrote to him to know if he could take it. In reply to his answer asking for some information, not shown, Mr. Bonnell, an agent of the college, in the absence of the president, wrote to him June 27, 1884, saying, "we want a principal for our musical department and one who will take hold of this city and impress it pro-

foundly, and who has an ambition to develop a musical depart-
ment of college to the largest possible degree. There is a
fine field in this city. * * * Will you accept the princi-
palship of this department of Chaddock College from the
receipts of that department for $800 per year to begin with?"
Appellee, by telegraph, inquired "How many teachers will
be in that department, how many pupils last year, what are
the terms, and is amount in letter guarantee that salary shall
not be less but as much as total income from department may
be?" Bonnell answered: "Three music teachers, fifty-one
music pupils last year, $15 per quarter instrumental and vocal
culture. Guarantee five-sixths of total income from musical
department." Appellee then telegraphed him July, 1884,
"Will accept position at five-sixths of tuition, but $800 must
be guaranteed," and on the 3d Bonnell closed the contract by
the following: "We guarantee you $800. Will depend on
you."

Under this contract appellee went to Quincy, took charge,
as principal, of the musical department of the college, and
held the position by re-engagement from year to year with-
out change in the contract, for three college years, from Sep-
tember to June. The income from that department for the
last year fell short of the amount guaranteed $127.30, which
appellant refused to pay.

No complaint is made of the manner in which he discharged
the duties of his position, or of any neglect or failure as to
any that were expected of him, except that he took private
pupils and gave them instruction in music, first at his
residence, and from November of the last year at rooms in
the city which he rented and fitted for that purpose, from
whom he received, for such instruction, more than the amount
of the deficiency claimed. That was the only ground of the
defense here set up. It is contended that in thus receiving
private pupils, and especially in organizing a conservatory of
music on his own account, as he did about the 1st of April,
1887, at the rooms referred to, he acted adversely to the inter-
ests of the college in the business or object for which it had
engaged him, employing for his own individual benefit the

Chaddock College v. Bretherick.

time, skill and labor therein which he was bound to employ for that of the college.

A trustee, agent, servant or employe, everybody under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He can not lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. Davis v. Hamlin, 108 Ill. 39. If appellee violated it and made any profit thereby, it should go to the college.

But whether he did or did not is a question of fact, to be determined by his contract and his acts.

The contract, and the whole of it, appears by the correspondence above quoted, from which it seems to have been, on his part, to serve the college as principal of its musical department, and on its part, to pay him as salary therefor five-sixths of the income from that department, guaranteeing, however, that it should be not less than $800, in other words, if that income should fall short of that sum he should have the whole of it and the college would make up the deficiency, and if it should be $800 or more, he was to have $800 of it, and in case five-sixths of that income should exceed that sum, the amount of such excess in addition.

We do not see that he contracted to do anything but to discharge the duties of principal of the musical department of the college. It is true he was informed it wanted for that purpose a man who would take hold of the city of Quincy and profoundly impress it, and who had a high and large ambition to develop such a department. But it is evident that the trustees of the college were satisfied by the recommendation of Mr. Eddy and thereupon, at their own risk, assumed that appellee was such a man. He did not contract to impress the city profoundly nor to develop the department " to the largest possible degree," but only to be and act as its principal, which was all they asked of him.

It is also true that upon receiving the dispatch of July 3d above quoted, he wrote to Mr. Bonnell, as follows:

"Your telegram accepting my proposition was received this morning, so that I shall at once make preparations to move, and have written Ripon, declining the position there. I hope we may be able to build up a good musical department and maintain a high standard. It will be my utmost endeavor to do this, and trust to be as successful as I have been heretofore."

From the beginning the defense seems to have proceeded upon the assumption from that letter that appellee agreed, absolutely, to "build up a good musical department," and by means, if necessary, other than the discharge of his duties as principal. We think this a mistake. The statements in that letter formed no part of the contract, or of the consideration for his employment. It was written after the contract was made and completed. It expressed only a hope and a purpose under that contract, but left the obligation just as it was before the letter was written, viz.: to perform the duties of principal. What these were, if any, beyond giving and directing the instruction in music to students, in that department of the college, were not prescribed by the contract, nor shown by proof of custom or otherwise. Certainly, the contract bound him to do what he reasonably could to build up and maintain a good musical department by the proper discharge of the duties pertaining to his position as principal. But we apprehend they did not obligate him to become a drummer for pupils, to find the students for the college as well as to instruct them. We are not able, from the law, the contract or the evidence, to indicate any positive duty beyond those mentioned, but may say, negatively, he could not rightfully do anything for his individual benefit that would materially interfere with his proper performance of those mentioned, or destroy or counteract the natural effect, in the interest of the college, of his proper performance of them.

It does not follow that he could do nothing directly for his own benefit as a professor of the science and art of music. Nobody would question his right to give a public concert,

Chaddock College v. Bretherick.

and as a means of drawing an audience advertise himself in its announcement as principal of the music department of Chaddock College; thus using his relation to the college for his individual profit. So he might prepare, publish and sell an instruction book, though it presented substantially the same course of study and method of teaching pursued in the college, and its actual effect might be to prevent some from attending as college pupils. The obvious reason is that these acts would not be in opposition to the interest of the college or interfere with the discharge of any duty he owed it. For the same reason he might take private pupils and instruct them singly or in classes, at his residence or at rooms elsewhere, for the course of instruction might be preparatory to that given in the college, or pupils might be those only who would not in any event become pupils of the college. But they should not be taken in competition with the college. Whether the private pupils of appellee in this case were so taken was a question of fact for the jury.

It appears that the college hours for musical instruction were from 8 A. M. to 12:20 P. M., and that those given to the private pupils were later, extending to 10 P. M., so that there was no interference in respect to time; that the private pupils were generally clerks in stores, school teachers and married ladies, persons who could not or would not attend the college as pupils in music; and that the price of instruction to them was higher than that asked by the college. We infer from the evidence that the location of the conservatory, so called, though on Main street in the city, was quite remote from that of the college, but the distance is not given. Appellant had, or could easily have ascertained the name and residence of every one of these private pupils, and yet made no attempt to show that but for the establishment of the conservatory any one would have attended the college. It would clearly have been for the interest of appellee to have them all as college rather than conservatory pupils, since in that case he would have received at least five-sixths of the income from them and been able to instruct them with more convenience and at less expense to himself. And, hence, it is not unrea-

sonable to believe that the conservatory was organized, not with any intention of competing with the college, but to obtain remunerative employment for his wife, who also taught, as well as himself, for a large amount of time that would otherwise be unoccupied, by thus accommodating those who desired instruction but would not attend the college, and the jury may have found that the facts accorded with such intention.

Moreover, there was evidence clearly tending to prove that the trustees of the college had full knowledge, from the first year of appellee's service, that he was thus instructing pupils on his own sole account, of his opening of the rooms on Main street for that purpose and of his intention to organize the conservatory; and that they consented to it. As to their consent to the organization of the conservatory, that evidence was not uncontradicted. Some of the trustees testified that they did object unless it should be organized as an adjunct of the musical department of the college and the proceeds accounted for to their treasurer, or that they supposed it would be or was so organized. Still, on this point, there was at least a conflict, which was for the jury to decide. We deem it unnecessary to present the substance or outline of that testimony here; but will say that circumstances clearly supported the positive statement of appellee, and we would not feel warranted in disturbing a finding in his favor. If the college consented to them, then these acts would not be a legal injury to it, though otherwise they might have been.

Nor would it be useful to extend this opinion by a discussion of the points made on the rulings of the court below. The issue was one of fact, which has been thrice found for the plaintiff, and we perceive no such error as should reverse this judgment on the verdict.

*Judgment affirmed.*